UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK YODICE, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    -v-<br><br>TOURO COLLEGE AND UNIVERSITY SYSTEM,<br><br>       Defendant. | Case No. 1:21-cv-2026<br><br>(JURY TRIAL DEMANDED) |

## CLASS ACTION COMPLAINT

Plaintiff Mark Yodice ("Plaintiff"), by and through undersigned counsel, brings this action against Touro College and University System ("Defendant") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## INTRODUCTION

1. Plaintiff brings this case as a result of Defendant's refusal to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and transitioning all classes to an online/remote form, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2. This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3. Defendant has either refused to provide reimbursement for the tuition, fees, and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

1

inadequate and/or arbitrary disbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.    This action seeks refunds of the amount Plaintiff and members of the Classes are owed on a *pro-rata* basis, together with the damages as pled herein.

## PARTIES

5.    Defendant Touro College and University System is a system of private graduate-level institutions run and administered by Defendant.

6.    Defendant is headquartered in New York City, New York, with branches throughout the United States and in three other countries. Defendant has a large endowment of approximately $44 million[1] and approximately 19,000 students across 35 undergraduate, graduate and professional schools, including, but not limited to, the following schools in the United States[2]

- New York School of Career and Applied Studies (New York City, NY)
- Touro College Los Angeles (West Hollywood, CA)
- Touro University California (Vallejo, CA)
- Touro University Nevada (Henderson, Nevada)
- Lander College for Men (Queens, NY)
- Lander College for Women (Manhattan, NY)
- Lander College of Arts and Sciences (Brooklyn, NY)
- Hebrew Theological College (Skokie, IL)
- Machon L'Parnasa Institute for Professional Studies (Brooklyn, NY)
- School for Lifelong Education (Brooklyn, NY)
- School of Health Sciences (Bay Shore, NY)
- New York Medical College (Valhalla, NY)
- Touro College Graduate School of Business (Manhattan, NY)
- Touro College Graduate School of Education (Manhattan, NY)
- Touro College Graduate School of Jewish Studies (Manhattan, NY)
- Touro College Graduate School of Social Work (Manhattan and Brooklyn, NY)
- Touro College Graduate School of Technology (Manhattan, NY)
- Touro College of Dental Medicine (Hawthorne, NY)
- Touro College of Osteopathic Medicine (Harlem and Middletown, NY)
- Touro College of Pharmacy (Manhattan, NY)

---

[1] https://www.usnews.com/best-colleges/touro-college-10142
[2] https://www.touro.edu/about/at-a-glance/ ("108,083 alumni. 19,000 students. 35 schools. 4 countries. One Touro.")

2

- Touro Law / Jacob D. Fuchsberg Law Center (Central Islip, NY)

7.      According to Defendant, there are 589 international students and 38 different countries represented on Touro campuses.[3]

8.      Defendant also operates an online program called Touro University Worldwide, which offers both undergraduate and graduate-level degrees.[4]

9.      Upon information and belief, Defendant was allocated more than $7.5 million of federal stimulus funds under the CARES Act.[5]

10.     Plaintiff Mark Yodice is an individual and resident and citizen of the state of South Carolina and was a student enrolled at the Touro College of Dental Medicine during the Spring 2020 term.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

13.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

---

[3] https://www.collegefactual.com/colleges/touro-college/student-life/international/#secOverall
[4] https://www.tuw.edu
[5] https://www.collegescholarships.org/loans/emergency.html

## BACKGROUND FACTS

14.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

15.     As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

16.     There are hundreds, if not thousands, of institutions of higher learning in this country.

17.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

18.     Defendant's institutions offer both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

19.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

20.     Undergraduate tuition costs associated with Defendant's online degree program through Touro University Worldwide are significantly lower than at other Touro Schools offering Bachelor's Degrees through in-person classes.  Notably, Defendant markets Touro University Worldwide as an "affordable option" when compared to the costs of tuition at other schools of Defendant.[6]

---

[6] https://www.tuw.edu

> **Your online degree shouldn't cost your life's savings.**
>
> We offer affordable options starting at $400/credit for your Associate or Bachelor's degree. We also offer many financial aid options to help lower the cost even more. Our tuition includes all necessary resources to complete each class so you'll never be hit with unexpected extra charges. We supply the materials so the only thing you have to budget is your time.

21.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include, but are not limited to:

   a. Face-to-face interaction with professors, mentors, and peers;

   b. Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

   c. Student governance and student unions;

   d. Extra-curricular activities, groups, intramurals, etc.;

   e. Student art, cultures, and other activities;

   f. Exposure to community members of diverse backgrounds, cultures, and schools of thought;

   g. Social development and independence;

   h. Hands-on learning and experimentation; and

   i. Networking and mentorship opportunities.

22.     Defendant markets the on-campus experience as a benefit of enrollment in their in-person, hands-on programs.[7][8]

---

[7] https://www.nymc.edu/future-students/student-life/
[8] https://dental.touro.edu/about/our-campus/

## Student Life

Student life at NYMC comprises a rich mix of experiences based on our location, our culture and our offerings. On our beautiful 54-acre campus in Westchester County in the lower Hudson Valley, you will enjoy a peaceful suburban lifestyle just a half-hour from New York City. And while you're here, you will feel part of a close community that is supportive, committed and enthusiastic.



At NYMC, you'll have opportunities to be involved with the local community, join a broad range of student organizations and participate in campus and local events, as well as live comfortably, dine well and get around easily.

# Suburban Living with Easy Access to New York City

Just a 30 minute drive or train ride to Manhattan, our location in the scenic Hudson Valley attracts talented students who prefer a suburban lifestyle with easy access to the New York metropolitan area. From vast mountain regions to downtown city streets, Westchester offers abundant attractions, outdoor adventure, great shopping and dining, and a picturesque setting that enhances social life outside of TCDM.

Our proximity in the New York Tri-State region also provides students with numerous career, residency, clinical, and internship opportunities. Our local affiliate hospitals and health centers offer exceptional clinical training and experience with diverse populations. TCDM students also benefit from our close ties with local public health commissioners, affording many community service opportunities such as volunteering at schools, community centers, food banks, and homeless shelters, and annual screenings for veterans, children and other vulnerable populations. These experiences offer a chance for students to put their learning into practice, conduct research, or interact with patients and professionals in preparation for their future careers.

   23. Defendant's emphasis on the on-campus experience is consistent across all of its

campuses.[9]

---

[9] https://tun.touro.edu/life-at-touro-nevada/

# Life at Touro Nevada

A community where you can make a difference – at Touro Nevada, you'll have an impact in the classroom, on campus, and throughout Southern Nevada.

24.     Defendant even requires on-campus attendance in the system, such as their Los Angeles campus:[10]

## Requirements

In order to earn the bachelor's degree, all students must complete:

- **120 total credits of college level work**
  Students must attain at least a 2.0 cumulative GPA. At least 45 credits must be completed in residency at TCLA.

- **All major requirements and assessments**
  Students must attain at least a 2.3 GPA in their major, and complete at least 50% of their major courses at the College.

25.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

26.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which he paid, and in exchange for which Defendant had accepted tuition.

27.     In addition to tuition, Defendant charges certain mandatory fees to students.

28.     For example, undergraduate students at Touro NY paid mandatory fees for the Spring 2020 Semester, including, but not limited to, a $300 "Life Experience Fee."

---

[10] https://tcla.touro.edu/academics/

29.     Students at Touro School of Dental Medicine pay mandatory fees for the Spring 2020 Semester, including, but not limited to, a "Campus Fee," a "Tech Fee" and "Materials Fee."

30.     Nearly all other programs in Defendant's system charge similar "Student Fees" and "Tech Fees."

31.     For example, the New York Medical College branch of the Touro College and University System charges fees for "Housing," "Food," "Transportation," "Telecommunication," and "Miscellaneous."[11]

32.     In addition to the broad-based mandatory fees described above, Defendant charges a myriad of other program or course specific fees, together with optional fees for additional services and activities.

33.     Conversely, Defendant acknowledges that its online-only product does not require students to pay these types of fees.[12]

All materials for TUW are fully online, so there is no textbook requirement for any of our programs. In addition to eliminating this cost, TUW has eliminated many of the fees and hidden costs that drive up the cost of tuition. When you enroll in a TUW online degree program, you can say no to:

| Type | Amount |
| --- | --- |
| Library fees | $0 |
| Media fees | $0 |
| Parking fees | $0 |
| Student ID card | $0 |
| Student service fees | $0 |
| Technology fees | $0 |

34.     Plaintiff and members of the Fees Class were required to and did pay all mandatory, program or course specific, and other fees associated with the Spring 2020 semester.

---

[11] https://www.nymc.edu/current-students/office-of-student-financial-planning/budgets--tuition/school-of-medicine/continuing-student-first-time-applicant/class-of-2022/
[12] https://www.tuw.edu/admissions/tuition/

## FACTUAL ALLEGATIONS

**College of Dental Medicine**

35.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[13]

36.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 18, 2020 and white coat ceremonies scheduled for May 31, 2021.[14]

37.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 110 days.

**Lander College for Men**

38.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 21, 2020.[15]

39.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 5, 2020.[16]

40.     Accordingly, Defendant's semester was scheduled for approximately 135 days.

**Lander College for Women**

41.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[17]

42.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 5, 2020.[18]

---

[13] https://dental.touro.edu/dds-program/academic-calendar/
[14] Id.
[15] https://lcm.touro.edu/academics/academic-calendar/calendar-view/
[16] Id.
[17] http://web.archive.org/web/20191221010823/https://lcw.touro.edu/academics/academic-calendar/
[18] http://web.archive.org/web/20191221010823/https://lcw.touro.edu/academics/academic-calendar/

43.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 130 days.

**Lander College of Arts & Sciences**

44.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 29, 2020.[19]

45.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 19, 2020.[20]

46.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 140 days.

**Machon L'Parnasa/Institute for Professional Studies**

47.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 29, 2020.[21]

48.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 19, 2020.[22]

49.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 140 days.

**New York School of Career and Applied Studies**

50.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 26, 2020.[23]

---

[19] https://las.touro.edu/women/academic-calendar/calendar-view/
[20] Id.
[21] http://machon.touro.edu/programs/academic-calendar/
[22] Id.
[23] https://nyscas.touro.edu/academics/academic-calendar/calendar-view/

51.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 5, 2020.[24]

52.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 130 days.

**School for Lifelong Education**

53.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[25]

54.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 18, 2020.[26]

55.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 140 days.

**Touro College Los Angeles**

56.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[27]

57.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 19, 2020.[28]

58.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 145 days.

**Graduate School of Business**

---

[24] Id.
[25] https://sle.touro.edu/academic-calendar/search/?d=2020-01-07&rd=2019-12-17
[26] Id.
[27] https://tcla.touro.edu/academics/calendar/
[28] Id.

59.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[29]

60.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 21, 2020.[30]

61.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 115 days.

**Graduate School of Education**

62.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 26, 2020.[31]

63.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 21, 2020.[32]

64.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 115 days.

**Graduate School of Jewish Studies**

65.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[33]

66.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 21, 2020.[34]

67.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 115 days.

---

[29] http://web.archive.org/web/20191221185051/https://gsb.touro.edu/programs/academic-calendar/
[30] Id.
[31] http://web.archive.org/web/20191109143037/https://gse.touro.edu/academics/academic-calendar/
[32] Id.
[33] http://web.archive.org/web/20200809152404/http://gsjs.touro.edu/academics/academic-calendar/
[34] http://web.archive.org/web/20200809152404/http://gsjs.touro.edu/academics/academic-calendar/

**Graduate School of Social Work**

68.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 26, 2020.[35]

69.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 14, 2020.[36]

70.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 110 days.

**Graduate School of Technology**

71.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[37]

72.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 12, 2020.[38]

73.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 110 days.

**School of Health Sciences**

74.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 27, 2020.[39]

75.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 18, 2020.[40]

---

[35] https://gssw.touro.edu/master-of-social-work/academic-calendar/
[36] Id.
[37] https://gst.touro.edu/docs/msis/msis/msis-calendar-spring-2020.pdf
[38] Id.
[39] https://shs.touro.edu/programs/academic-calendar/
[40] Id.

13

76.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 110 days.

**College of Osteopathic Medicine**

77.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 26, 2020.[41]

78.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 5, 2020.[42]

79.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 130 days.

**College of Pharmacy**

80.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[43]

81.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 19, 2020.[44]

82.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 130 days.

**Touro Law / Jacob D. Fuchsberg Law Center**

83.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 12, 2020.

---

[41] https://web.archive.org/web/20191222013250/https://tourocom.touro.edu/academics/academic-calendar/
[42] Id.
[43] https://web.archive.org/web/20200128091601/http://tcop.touro.edu/academics/doctor-of-pharmacy/academic-calendar/
[44] Id.

14

84.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 15, 2020.

85.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 125 days.

**New York Medical College**

86.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 5, 2020.

87.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 5, 2020.

88.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 125 days.

**Touro University California**

89.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 6, 2020.[45]

90.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 17, 2020.[46]

91.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 130 days.

**Touro University Nevada**

92.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about March 2, 2020.[47]

---

[45] http://studentservices.tu.edu/registrar/2019-2020%20TUC%20R2.pdf
[46] http://studentservices.tu.edu/registrar/2019-2020%20TUC%20R2.pdf
[47] https://tun.touro.edu/media/schools-and-colleges/tun/financial-aid-pdfs/2019-2020AcademicCalendar01242019.pdf

93.     Upon information and belief, Defendant's Spring term was scheduled to conclude on or about June 26, 2020.[48]

94.     Accordingly, Defendant's spring semester was scheduled and contracted to consist of approximately 115 days.

**All Campuses**

95.     On March 6, 2020, Defendant announced that, due to the global COVID-19 pandemic, Defendant would "implement[]an entirely online course delivery system for our New York-based academic programs, effective []Monday-Thursday March 9-12." On March 11, 2020, Defendant extended the closure of its facilities located in New York, including Defendant Touro NY, "until after the Passover holiday—Monday April 20, 2020." Then, in an update dated March 22, 2020, Defendant's Executive Vice President Rabbi Moshe D. Krupka that Defendant would expand the scope of the closure of its schools, noting that "except for [New York Medical College], all Touro facilities will be closed. No Touro College students or employees should come to school or come to work onsite unless they have been identified and authorized by the central Touro administration as essential." Finally, on April 7, 2020, Executive Vice President Rabbi Krupka announced that the matriculating students of its many schools "cannot return to campus as planned on April 20" and that Defendant would "continue [its] academic programs remotely through the end of the Spring 2020 semester."[49]

96.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students between March  9-22, 2020 (the "Eviction

---

[48] https://tun.touro.edu/media/schools-and-colleges/tun/financial-aid-pdfs/2019-2020AcademicCalendar01242019.pdf
[49] See https://www.touro.edu/updates/coronavirus/

Period") deprived Plaintiff and other members of the Classes from access to campus facilities and in-person instruction for approximately 50% of the semester for which they had contracted.

97.    Although Defendant continued to offer online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

98.    Access to facilities such as libraries, laboratories, computer labs, and study rooms, are integral to the college experience, and access to the myriad of activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and material parts of the basis upon which Defendant can charge the tuition and fees it charges, were not provided.

99.    These realities notwithstanding, Defendant has refused, and continues to refuse, to offer any refund whatsoever with respect to the tuition that has already been paid.

100.    Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

101.    These realities notwithstanding, Defendant has refused, and continues to refuse, to issue any pro-rated refunds for Fees.

102.    Plaintiff and the members of the Classes are therefore entitled to a pro-rated refund of the tuition and fees they paid for the Spring 2020 semester from when Defendant stopped providing in-person classes and switched to remote online learning.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of a student enrolled in classes in the Touro College and University System for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter potion of that semester.
>
> **The Fees Class:**
>
> All people who paid fees for or on behalf of a student enrolled in classes in the Touro College and University System for the Spring 2020 semester.

104.    Excluded from the Classes is the Touro College and University System, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

105.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

106.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

107.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believe that there are

thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

108.    This action involves common questions of law and fact, which predominate over any questions affections affecting individual members of the Classes, including, without limitation:

(a)    Whether Defendant engaged in the conduct alleged herein;

(b)    Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)    Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)    Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)    Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits, facilities and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits, facilities and/or programs the fees were intended to cover;

(g)     Whether Defendant violated New York General Business Law § 349, § 350 et seq. as to Plaintiff and the other members of the Classes;

(h)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(i)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(j)     The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

109.     Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

110.     Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

111.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

112.    Even if members of the Classes could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

113.    To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

114.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Plaintiff and Other Members of the Tuition Class)**

115.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

116.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

117.    Plaintiff and other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

118.    The rights and privileges of students at the Touro College and University System that comprise the contractual terms are set forth by Defendant or implied through its website, academic catalogs, student handbooks, correspondence, marketing materials, Course Catalog, and other circulars, bulletins and publications.

119.    These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

120.    One such right is the ability to be physically present on campus, and fully enjoy the facilities, services and opportunities provided thereon, including the campus's location and surrounding opportunities.

121.    Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts of influence such students to apply for enrollment at the Touro College and University System as opposed to other institutions of higher learning.

122.    Through these publications, Defendant markets to and enrolls students seeking a comprehensive on-campus educational experience.

123.    For example, students at Defendant's Dental and Medical School are promised "all the benefits of an integrated campus experience":[50]

New York Medical College joined the Touro College and University System in 2011, providing dental students with all of the benefits of an integrated campus experience and the expertise of a medical, graduate, and public health school faculty. TCDM students enjoy the facilities and amenities of a large campus – all while maintaining a close knit, community atmosphere.

Skyline Drive complex is connected to New York Medical College through a private access road, allowing students to walk, bike, drive or take a free shuttle just 500 yards to the main campus. TCDM students utilize New York Medical College research facilities, an anatomy lab, a simulation training center, classrooms and auditoriums, as well many amenities including a cafeteria and café, a bookstore, a Health Sciences Library, sports facilities, and many common spaces.

124.    Defendant's publications are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student teach/ratios; campus diversity, campus location and the like.

125.    For example, Defendant promises its dental students access to biomedical science facilities and labs to work with experienced faculty:[51]

Housed on the campus of New York Medical College, TCDM has access to biomedical science facilities and laboratories, and to the NYMC faculty, with their many years of experience. Our basic and pre-clinical sciences curriculum is closely integrated with medical education.

---

[50] https://dental.touro.edu/about/our-campus/
[51] https://dental.touro.edu/dds-program/

126.    These students are promised utilization of "state-of-the-art" technology.[52]

# Preclinical Dental Sciences

Our preclinical simulation and dental sciences curriculum takes students without dental experience and prepares them for success with actual patients in the clinic setting. Central to this process is our well-designed, 113-seat Dental Simulation Laboratory.

The curriculum and facility allow our students to learn, and practice, the most up to date, evidence-based dental procedures and techniques. All students utilize state-of-the-art digital dental technologies, including dental cone beam CT imaging, learning digital dental workflows, scanning, 3D printing, milling of restorations, along with restoring and placing implants.

Their learning is further enhanced by the availability of digital audio and video content both in real-time, and recorded, from each seat in the lab.

127.    Defendant also promises its students hands-on clinical experience in laboratories,

"putting to practice what has been learned in the classroom."[53]

TCDM's clinical program begins with the foundation in the dental simulation laboratory and then pairs students to treat patients in our modern clinic. Putting into practice what has been learned in the classroom, dental students create treatment plans for their patients and employ digital impressions, 3D scanning and printing, and other current technologies.

128.    At Defendant's Lander College for Women, Defendant promises its students

access to "seminar-style classrooms" and "personalized resources."[54]

Lander College for Women/The Anna Ruth and Mark Hasten School (LCW) prides itself on offering **affordable academic excellence with Torah values**. Our small classes foster close interactions between students and **faculty**, encouraging a spirit of academic curiosity. In our seminar-style classrooms, professors form academic relationships with their students. Our outstanding curriculum is matched only by the personalized resources we offer to help you become a competitive candidate in today's job market; including an exceptional internship program that has placed students in the halls of Congress, **top medical college research labs** and the **International Criminal Court of Justice at The Hague**. Our interns and alumnae can also be found at the most coveted corporate addresses including Cantor Fitzgerald, Google, Kenneth Cole, Forbes and Goldman Sachs.

129.    At Defendant's Lander College for Men, Defendant promises its students access

to its "state-of-the-art" facilities.[55]

---

[52] https://dental.touro.edu/dds-program/basic--preclinical-sciences/
[53]  https://dental.touro.edu/dds-program/
[54] https://lcw.touro.edu/about-us/
[55] https://lcm.touro.edu/campus-life/facilities/

# Seven acres of comfort and state of the art facilities.

The Kew Gardens Hills campus offers the best of both worlds—beautiful open space and all the modern and technological amenities a student needs.

### Academic Center

At 73,000 square feet, the main building is spacious, modern, and inviting, offering plenty of wired seminar and classrooms and housing faculty and administrative offices.

### Laboratories

Well-equipped biology, chemistry, physics, and computer science labs, located in the academic building, support our strong college programs in the sciences.

### The Quad

Perfect for sitting and studying or congregating with peers, rebbeim and professors, the 8,000 square foot quadrangle is situated immediately behind the academic building and dormitories.

### Beis Medrash/Study Hall

Students come to our beautiful 4,500 square foot *beis medrash* to study the Torah in a focused environment.

### Library

Equipped with an extensive online system, our modern, well-lit **library** provides another welcoming area for students to study and research.

### Lounges

Both indoor and outdoor student lounges are ideal meeting and recreation areas.

### Cafeteria

The campus cafeteria provides a large, communal dining area which seats 250.

### Athletic Facilities

Beyond the quad, our athletic facilities include a baseball diamond, football field, two regulation-size basketball courts, and a tennis court. A 10,000 square foot gym, stocked with state-of-the-art equipment, is adjacent to the gated campus complex.

130.    Students at Defendant's Los Angeles campus are promised access to Defendant's campus and computer lab.[56][57]

# Student Life

Our beliefs, our heritage, and our values shape our daily life, both in and out of the classroom.

We attract observant Jewish students from all walks of life and backgrounds. While most come from a day school and yeshiva/seminary background, some have been homeschooled or attended public schools. Many of our students work full- or part-time or take care of their family while in school.

We gather on **campus**, united in our commitment to Torah, our education, and our community.

---

[56] https://tcla.touro.edu/student-life/

[57] https://tcla.touro.edu/about/campus/

25

**Campus Facilities & Amenities**

Our campus is small and beautiful, offering a pleasant respite from the bustling city that surrounds us. There are plenty of spaces where students can study, relax, or gather for a reading group. TCLA boasts a Beit Medrash used exclusively for prayer services and Torah study. In addition, our campus offers a computer lab open to students throughout the day to use for the completion of assignments, research, or check e-mail.

131.    At Defendant's New York School of Career and Applied Studied Campus, Defendant promises students "hands-on career preparation."[58]

# Your future success starts here.

At the New York School of Career and Applied Studies (NYSCAS), we offer high-quality, professionally-oriented degree programs and hands-on career preparation to get you on the path to success.

We serve students of all backgrounds, offering them one-on-one guidance and support as we help them develop the real-world skills they need to succeed.

132.    Defendant's promise to provide "hands-on" education theme appears through its websites for its various schools.[59] [60]

# At NYSCAS, we offer the degree—and the hands-on career guidance—you need to make your education work for you.

Our courses are led by **knowledgeable, experienced professors** who will take the time to make sure you develop the skills and knowledge you need to thrive in your chosen field.

# Hands-on, Industry Specific Graduate Business Programs

We go beyond textbooks and theory. Get practical, streetsmart training from our industry experts professors.

All of our classes are small—we have a student/faculty ratio of 12:1, so whatever your program, you will receive plenty of personalized instruction and support.

Find the track that fits your schedule and aspirations:

---

[58] https://nyscas.touro.edu/about-us/
[59] https://nyscas.touro.edu/academics/
[60] https://gsb.touro.edu/programs/

133.    Defendant also consistently promises its students a "vibrant student life."[61]

## Student Life

GSB has a vibrant student life focused on helping our students explore the business world, expand their networks, and put their innovative ideas to work.

Two of the endeavors we're most proud of are our Entrepreneurs' Success Circle (ESC)

134.    At Defendant's Graduate School of Jewish Studies, students are promised

education in seminar-style classes.[62]

## About Us

More than a degree in Jewish studies.

Develop a rich understanding of Jewish history and Jewish education. Be a part of a supportive and inspiring academic community built on mutual respect and intellectual curiosity.

At the Touro Graduate School of Jewish Studies, accomplished professors will lead you in seminar-style classes where you learn alongside students who share your enthusiasm and passion for grappling with texts and debating ideas.

Whichever campus you attend, you will find attentive faculty and true peers, a community of scholars.

135.    At Defendant's Graduate School of Social Work, Defendant repeats its promise to

provide seminar-style classes and hands-on experiences.[63]

## Equal parts textbook and experience

Our philosophy is activism as academics. You have the opportunity to participate in a fellowship program that allows select students to work with military veterans or gain training in Elder Care. On one of the coldest nights of the year, you can walk the streets of Manhattan with NYC's Department of Homeless Services and help raise awareness by counting the city's homeless population. And, as faculty, we lead our own community within Touro by example through mentorship and collaboration.

Our seminar-style classes give you easy access to your professors and a wealth of information and know-how. Internships and fieldwork give you hands-on experience, allowing you to pursue your interests, find new ones, round out your capabilities, and apply what you've learned. Our students have worked with young children and the elderly, veterans, recovering addicts, the formerly incarcerated, and everyone in between.

---

[61] https://gsb.touro.edu/student-life/
[62] http://gsjs.touro.edu/about-us/
[63] https://gssw.touro.edu/about-us/

136.    Defendant also promises students at its School of Health Sciences access to the "latest technology and research, as well as clinical experiences," and once again, "hands-on experience."[64][65]

# Rigorous Academics, Real Outcomes

From undergraduate studies to post-professional certification, our cutting edge curricula incorporate the latest technology and research, as well as clinical experience, to realistically prepare students for successful careers in the health sciences. Active practitioners, our faculty know exactly what it takes to excel in each field, and we have a reputation for producing well-prepared, highly qualified professionals by providing programs with an applied, clinical focus that emphasize relevant skills.

We partner with over 300 healthcare facilities throughout the New York area where you will complete fieldwork and clinical rotations, putting your learning to practice under the guidance of seasoned specialists.

# Exceptional Academics and Hands-on Experience

There's what you learn in a book, and then there's what happens in real life. Our faculty are dedicated educators with clinical expertise and a wealth of experience to share. They will teach you from the book, and then tell you about the patient they saw earlier that day and what a case like this might really look like. We have many years of experience with curriculum design, blending theory with practice. As a School of Health Sciences at Touro graduate, you will have a comprehensive clinical knowledge base and the skills to directly apply that knowledge to a patient's - or organization's - care.

137.    Likewise, Defendant promises students at its College of Pharmacy an education that combines "hands-on leaning" and "time in the classroom."[66]

[space left intentionally blank]

---

[64] https://shs.touro.edu/about-us/
[65] https://shs.touro.edu/programs/
[66] https://tcop.touro.edu/about/

# About Us

Since opening the doors to our Harlem campus in 2008, the Touro College of Pharmacy has offered a truly unique educational experience. We emphasize hands-on learning, extensive rotation practice experiences, and service to the community.

# Experiential Education

Our four-year Doctor of Pharmacy program equips students with all of the practical skills and knowledge they'll need to succeed as pharmacists and clinical researchers. The curriculum combines time in the classroom and controlled practice environments, as well as in the field, completing rotations under the supervision of faculty mentors and professional health care providers.

138.     Students at the College of Pharmacy are guaranteed the opportunity to study in Defendant's labs.[67]

# Beyond more rotations, at TCOP you'll have the opportunity to:

- **Study in a first-rate facility.** Our labs are top-notch. They're so good, the NYS Board of Pharmacy uses them to administer the Part III laboratory compounding exam.

139.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to the Eviction Period of students from Defendant's campuses that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.

140.     Those prospective students who are interested in enrolling at the Touro College and University System after relying on the marketing materials described above are invited to complete applications, and some are selected for and offered admission.

---

[67] https://tcop.touro.edu/pharmd/

141.    Classes intended to be taught in person are designated as such, and listed not only by description, but also by "meeting" time and physical, on-campus classroom location.

142.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

143.    Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

144.    Each day for the weeks and months leading up to the Eviction Period, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

145.    Each day for the weeks and months prior to the Eviction Period, students had access to the full campus.

146.    Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

147.    Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

148.    However, Defendant breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding the tuition accordingly.

149.    This cause of action does not allege "educational malpractice."

150.    Rather, it is clear from the facts and circumstances that Defendant offered a specific and identifiable product, that being live, in-person, on-campus education, with its featured ancillary and related services.

151.    Plaintiff and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

152.    However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

153.    Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them with the full benefit of the bargain.

154.    Defendant's refusal to issue refunds is in bad faith.

155.    Plaintiff and other members of Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

156.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

157.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

158.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

159.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

160.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

161.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

162.    Defendant has realized this benefit by accepting such payment.

163.    However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

164.    Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, i.e., live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, i.e., online instruction devoid of the on-campus experience, access, and services.

165.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the

circumstances.

166.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

167.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

168.    Equity and good conscience require that Defendant return to Plaintiff and other members of the Tuition Class a portion of the monies they paid in tuition.

169.    This is particularly true where, as here, Defendant is supported by a $44.2 million endowment, while its students, on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

170.    At the same time, Defendant received significant aid from the federal government.

171.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREAD OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

172.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

173.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

174.    In addition to tuition, Defendant charges mandatory and other optional fees that include, but are not limited to, individual class fees.

175.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

176.    It is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

177.    This rationale is further verified through Defendant's own admission in regard to the fees (or lack thereof) that its online-only product charges.[68]

All materials for TUW are fully online, so there is no textbook requirement for any of our programs. In addition to eliminating this cost, TUW has eliminated many of the fees and hidden costs that drive up the cost of tuition. When you enroll in a TUW online degree program, you can say no to:

| Type | Amount |
| --- | --- |
| Library fees | $0 |
| Media fees | $0 |
| Parking fees | $0 |
| Student ID card | $0 |
| Student service fees | $0 |
| Technology fees | $0 |

178.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

---

[68] https://www.tuw.edu/admissions/tuition/

34

179.    It is undisputed that Defendant did not provide student activities or access to recreational facilities for a portion of the Spring 2020 semester.

180.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

181.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

182.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

183.    Defendant's refusal to refund these fees is in bad faith.

184.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

185.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiff and Other Members of the Fees Class)

186.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

187.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

188.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

189.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

190.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

191.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

192.    Defendant realized this benefit by accepting such payment.

193.    Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

194.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

195.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

196.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

197.    This is particularly true where, as here, Defendant is supported by a $44.2 million endowment, while its students, on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

198.    At the same time, Defendant received significant aid from the federal government.

199.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF NY GENERAL BUSINESS LAW §§ 349, 350**
**(Plaintiff and Other Members of All Classes)**

200.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

201.    Plaintiff brings this count on behalf of himself and other members of the Classes.

202.    Plaintiff and the other members of the Classes are consumers who purchased Defendant's products and services and were subjected to unfair, misleading, false and deceptive business practices and advertising as alleged herein.

203.    New York General Business Law § 349 provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." [69]

---

[69] See New York General Business Law § 349 and § 350.

204.    New York General business Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."[70]

205.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law §§ 349 and 350 by engaging in the activities described herein.

206.    Plaintiff and other members of the Classes are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's campus for the Spring 2020 semester.

207.    Defendant's efforts to sell its services to prospective students, which included Plaintiff and the other members of the Classes, were "consumer-oriented."

208.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and members of the Classes) with respect to the in-person educational opportunity and on-campus experience that students who enrolled would receive.  Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the Defendant's universities for the Spring 2020 semester.

209.    With the reasonable expectation that students who enrolled would receive in-person academic instruction with an on-campus experience for the entire Spring 2020 semester, Plaintiff and other members of the Classes paid tuition and fees to Defendant.

210.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire Spring 2020 semester.  As a result, Plaintiff

---

[70] See New York General Business Law § 349 and § 350.

and other members of the Classes were proximately caused to pay inflated tuition and fees because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

211.    Therefore, the aforementioned statements, representations and omissions made by Defendant were objectively false, misleading and deceptive to Plaintiff and the other members of the Classes, as well as the public at large.

212.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Classes because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

213.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

214.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the Defendant's universities, then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

215.    Plaintiff and other members of the other members of the Classes were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

216.    As a result of Defendant's foregoing violations of New York General Business Law §§ 349 and 350, Defendant has directly and proximately caused damage to Plaintiff and other members of the Classes and are entitled to recover actual damages in an amount to be determined

at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.     Certifying the Classes as proposed herein, designating Plaintiff as Class representatives, and appointing undersigned counsel as Class Counsel;

B.     Declaring that Defendant is financially responsible for notifying the members of the Classes about the pendency of this action;

C.     Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.     Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.     Awarding compensatory, statutory, and/or punitive damages for Plaintiff's claims;

F.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

G.     Scheduling a trial by jury in this action;

H.     Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

I.      Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

J.     Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: March 9, 2021

**MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP**

By: /s/ John M. Bradham
      John M. Bradham (JK2342)
      Peter B. Katzman (PK8030)
444 Madison Avenue, 4th Floor
New York, New York 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com
      pkatzman@msbllp.com

-and-

**TOPTANI LAW PLLC**
Edward Toptani (ET6703)
375 Pearl Street, Suite 1410
New York, New York 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin (*Pro Hac Vice* Forthcoming)
Roy T. Willey, IV (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: eric@akimlawfirm.com
      roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES**