```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
MARK YODICE, individually and on         :
behalf of all others similarly           :
situated,                                :       21cv2026 (DLC)
                                         :
                    Plaintiff,           :       OPINION AND
                                         :          ORDER
          -v-                            :
                                         :
TOURO COLLEGE AND UNIVERSITY SYSTEM,     :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Mark Yodice:
Paul Doolittle
Eric Poulin
Roy T. Willey , IV
Anastopoulo Law Firm, LLC
32 Ann Street
Charleston, SC 29403

John Macleod Bradham
Peter B. Katzman
Morea Schwartz Bradham Friedman & Brown LLP
444 Madison Avenue
Fourth Floor
New York, NY 10022

Edward G. Toptani
Toptani Law PLLC
375 Pearl Street, Suite 1410
New York, NY 10038

For defendant Touro College and University System:
Mariah L Passarelli
Cozen O'Connor
301 Grant Street, 26th Floor
Pittsburgh, PA 15219

Janice Sued Agresti

Cozen O'Connor
3WTC 175 Greenwich Street
Ste 55th Floor
New York, NY 10007

DENISE COTE, District Judge:

Mark Yodice, a former student in the Touro College and University System ("Touro"), brought this action against Touro seeking reimbursement of tuition and fees he paid during the Spring 2020 semester, when Touro's campuses were closed due to the COVID-19 pandemic. An Opinion of November 4, 2021 granted a motion to dismiss all of Touro's claims ("2021 Opinion"). The Court of Appeals for the Second Circuit affirmed the 2021 Opinion in part and remanded this case for consideration of additional arguments raised by the defendant. <u>Yodice v. Touro Coll. & Univ. Sys.</u>, No. 21-2986, 2024 WL 3466546 (2d Cir. July 19, 2024) ("2024 Opinion"). On remand, Touro has again moved to dismiss Yodice's claims. For the following reasons, the motion is granted in part.

## Background

This Opinion assumes familiarity with the prior Opinions in this case and summarizes only the facts necessary to decide this motion. With the exception of New York's COVID-19 restrictions, facts are taken from the first amended complaint ("FAC") and

2

documents integral to the FAC. They are assumed to be true for the purposes of this motion.

In 2020, Yodice was a full-time student at the Touro College of Dental Medicine ("TCDM") in Hawthorne, New York. TCDM is one of 35 undergraduate, graduate, and professional schools, attended by nearly 20,000 students, that are part of Touro's private university system. Those schools are located across the United States and three other countries. The Touro system also includes an online institution named Touro University Worldwide ("TUW"), which offers undergraduate and graduate degree programs.

A.   TCDM's Representations

Online and in recruitment brochures, TCDM markets various aspects of the on-campus student experience to the public. In a section on "Preclinical Dental Sciences," the website states that "students utilize state-of-the-art digital dental technologies, including dental cone beam CT imaging, learning digital dental workflows, scanning, 3D printing, milling of restorations, along with restoring and replacing implants." The website says that students begin in the "dental simulation laboratory" and then "treat patients in our modern clinic." The website also emphasizes the setting of TCDM's Hudson Valley campus, which "attracts talented students who prefer a suburban

lifestyle with easy access to the New York metropolitan area." The campus's location, the website explains, "provides students with numerous career, residency, clinical, and internship opportunities." And various opportunities to work with local institutions "offer a chance for students to put their learning into practice, conduct research, or interact with patients and professionals in preparation for their future careers."

B.  Spring 2020

At the beginning of the Spring 2020 semester, Yodice paid tuition and fees, as was required to attend the university. The semester at TCDM was scheduled to run from January 2020 to the end of May.

On March 6, 2020, in the early throes of the COVID-19 pandemic, Touro announced that it would close all New York campuses and hold classes online, including TCDM's, between March 9 and March 12. The next day, the Governor of the State of New York declared a Disaster Emergency. That declaration was followed by a series of executive orders that ultimately prohibited the in-person operation of nonessential businesses until June 2020.

As the pandemic continued to worsen, Touro announced on March 11, 2020 the extension of remote instruction to April 20. On March 20, the Governor ordered the total closure of

nonessential businesses.  On March 22, Touro told all
nonessential employees and students to not come to any campus
facility, except for the New York Medical College.  And on April
7, Touro announced that academic programs would be held remotely
through the end of the Spring 2020 semester.

Yodice left campus sometime in March.  He did not have
access to any of Touro's facilities for the rest of the
semester, and he was unable to experience the in-person
academic, social, and professional interactions he would have
had if not for the pandemic.  Touro did not refund the tuition
or fees paid by Yodice and other students who were unable to
participate in in-person instruction or campus life for much of
the Spring 2020 semester.

C.    Yodice's Lawsuit

Yodice filed this action on March 9, 2021.  On behalf of
himself and a putative class of Touro students, Yodice first
alleged breach of contract and unjust enrichment claims arising
from the tuition he paid Touro for the Spring 2020 semester
("Tuition Claims").  Second, he alleged breach of contract and
unjust enrichment for fees that he paid Touro corresponding to
services he was unable to access during part of that semester
("Fee Claims").  Finally, Yodice alleged that Touro violated §§
349 and 350 of the New York General Business Law ("GBL") for

falsely advertising that students would receive in-person instruction and an on-campus experience. The 2021 Opinion granted a motion to dismiss all of Yodice's claims. Yodice v. Touro Coll. & Univ. Sys., No. 21cv2026, 2021 WL 5140058 (S.D.N.Y. Nov. 4, 2021).

On July 19, 2024, the Court of Appeals for the Second Circuit vacated the 2021 Opinion in part, remanding the case for further proceedings. 2024 WL 3466546, at *3. The Second Circuit affirmed the dismissal of the Fee Claims. Id. It reversed the dismissal of the Tuition Claims, concluding that the plaintiff "plausibly stated a claim for breach of an implied contract to recover tuition." Id. at *2. It also reversed the dismissal of the GBL claim, remanding for additional consideration in light of the Second Circuit's Opinion in Rynasko v. N.Y. Univ., 63 F.4th 186 (2d Cir. 2023). 2024 WL 3466546, at *2.

The Second Circuit's mandate issued on August 9, 2024. On September 10, the plaintiff filed the FAC. In the FAC, Yodice again alleged the Tuition Claims and violation of the GBL. He purports to represent a class of anyone who paid tuition as or on behalf of any student in the Touro system who was denied in-person instruction during the latter part of the Spring 2020

semester. Touro moved to dismiss Yodice's remaining claims on October 8. That motion was fully briefed on November 22.

## Discussion

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In determining if a claim is sufficiently plausible, a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).

In the FAC, Yodice brings three claims against Touro: breach of contract, unjust enrichment, and violation of GBL §§ 349 and 350. The Second Circuit having ruled that Yodice has succeeded in alleging the existence of an implied contract, Touro argues that all three claims still must be dismissed

pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The defendant argues that performance of the contract was excused due to impossibility, that Yodice has not adequately alleged unjust enrichment, and that he has failed to state a GBL claim.  Touro also argues that Yodice lacks class standing to represent students who attended schools other than the one he did.  For the following reasons, Touro's contract and GBL claims are dismissed.  His unjust enrichment claim survives, but only with respect to those who paid tuition for the Spring 2020 semester at TCDM.

I.    Class Standing

Touro first argues that Yodice does not have standing to represent students who attended Touro institutions other than TCDM.  Touro is correct, so Yodice's claims are dismissed insofar as they are brought on behalf of putative class members who did not attend TCDM.[1]

In the Second Circuit, class standing may be evaluated on a motion to dismiss.  Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon, 775 F.3d 154, 160-61 (2d Cir. 2014).

---

[1] Touro also argues that Yodice cannot bring New York state law claims with regard to entities that exist outside of New York. Because Yodice's claims are dismissed insofar as they refer to institutions other than TCDM on other grounds, this argument need not be addressed.

> In a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

Id. at 161 (citation omitted).

Yodice has not alleged that Touro's conduct at TCDM implicates the same set of concerns as the conduct alleged to have injured students at other Touro schools. According to the FAC, Touro students number in the tens of thousands, across 35 schools at the undergraduate, graduate, and professional levels, in four different countries. The FAC itself emphasizes the representations by specific Touro schools as to the quality of the on-campus experiences they offered. The only characteristic that the dozens of Touro schools around the world share is affiliation with the same corporate entity. And Yodice provides no reason to think he has anything in common with most of the class he seeks to represent except that they were, like him, students during the pandemic.

Yodice's arguments to the contrary are unavailing. Yodice points out that he has individual standing to sue the one defendant in this case, but that requirement refers to individual Article III standing or the first element of the class standing analysis, which is not contested here. See Cent.

States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007). In this Circuit, a plaintiff does not have class standing just because he has Article III standing to bring his own claim against a defendant. See Bank of N.Y. Mellon, 775 F.3d at 161 (noting that class standing is not satisfied merely because the named plaintiffs "have adequately pled that they have personally suffered an actual injury as a result of [the defendant's] putatively illegal conduct").

Yodice next argues that Touro conflates Article III standing with requirements for class certification, and that its class standing arguments are properly handled in assessing the adequacy and commonality of the class representative and class pursuant to Rule 23(a), Fed. R. Civ. P. Despite the "murky line between traditional Article III standing and so-called 'class standing,'" Bank of N.Y. Mellon, 775 F.3d at 160, in this Circuit, individual Article III standing, class standing, and Rule 23(a) each entail distinct requirements. In other words, the test for class standing, which is quoted above, is "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." Id. at 161. While Yodice must also meet the Rule 23(a) requirements for a class to be certified, the independent requirement of class

standing requires a connection between his claims and those of the class he seeks to represent even at the motion to dismiss stage. Because Yodice has failed to allege such a connection, his remaining claims are dismissed to the extent they are brought on behalf of students who did not attend TCDM in the Spring of 2020.

II. Breach of Contract

Touro argues that Yodice's breach of contract claim should be dismissed because the performance of its contractual duties was impossible. It is correct.

"Impossibility (also known as 'impracticability') is an affirmative defense under New York law against liability for nonperformance of a contractual obligation." Siemens Energy, Inc. v. Petróleos de Venezuela, S.A., 82 F.4th 144, 153 (2d Cir. 2023). "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." Id. (citation omitted). "Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." Id. (citation omitted). "If the performance of a duty is made impracticable by having to comply with a . . . governmental regulation or order, that regulation or order is an event the non-occurrence

of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 264 (Am. L. Inst. 1981); see also id. cmt. a (explaining that the duty to render performance that supervening government action renders illegal is discharged).[2]

Here, Touro's performance was made impossible by the Governor's order prohibiting the in-person operation of nonessential businesses during all of the relevant months of TCDM's move to remote instruction. There is no dispute that holding in-person classes and other functions, as Yodice alleges was promised, would have been illegal.

Yodice argues that impossibility cannot be considered on a motion to dismiss. But dismissal on the basis of an affirmative defense is appropriate where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Michael Grecco Prods., Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (citation omitted). Based on the facts about the COVID-19 pandemic and the government's response that are in the FAC, and that are not disputed by the parties, a

---

[2] "When analyzing contracts governed by New York law, New York courts look to the Restatement of Contracts." Siemens Energy, 82 F.4th at 153 n.11.

reasonable factfinder could reach only the conclusion that Touro's performance under the implied contract was impossible.

Yodice otherwise argues that, even if the impossibility defense excused Touro's nonperformance, he would still be owed reimbursement for some portion of his tuition. This argument is essentially one for restitution due to unjust enrichment and is addressed next.

III. Unjust Enrichment

Because Touro was relieved of its contractual duty to provide in-person instruction, Yodice also brings a claim for unjust enrichment, seeking a prorated refund of the tuition he paid at the beginning of the semester. See Rynasko, 63 F.4th at 202. Touro moves to dismiss this claim as duplicative and insufficiently pleaded. Those arguments fail, and the motion is denied with respect to the unjust enrichment claim.

"To recover under a theory of unjust enrichment under New York law, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Id. at 201 (citation omitted). With regard to the third element, "courts look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant,

if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." Columbia Mem. Hosp. v. Hinds, 38 N.Y.3d 253, 275 (N.Y. 2022) (citation omitted).

Yodice has stated a claim for unjust enrichment. According to the FAC, he paid tuition to Touro, which retained his tuition even after providing a less valuable and less costly service than was expected when the parties entered their relationship. The FAC alleges essentially that the tuition was conferred under a mistake of fact -- that is, that in-person instruction would be possible. It plausibly alleges that Touro spent less money operating TCDM remotely than it would have on a normal, open physical campus. Whether equity and good conscience require a partial refund cannot be decided at this stage, but Yodice has sufficiently alleged that they do.

Touro first argues that the unjust enrichment claim is duplicative of the implied contract claim. An unjust enrichment claim cannot simply replace a defective breach of contract claim. Corsello v. Verizon N.Y., Inc., 944 N.Y.S.2d 732, 740 (N.Y. 2012). But it may be available where one party's duty to perform is unenforceable due to impossibility. See Rynasko, 63

F.4th at 202.³  Here, the COVID-19 pandemic excused Touro's nonperformance under the implied contract, but Yodice had already performed his contractual duties.  He may state an unjust enrichment claim in these circumstances.

In its reply brief, Touro cites Goldberg v. Pace Univ., 88 F.4th 204 (2d Cir. 2023), where the Second Circuit rejected as duplicative an unjust enrichment claim.  Id. at 215.  But there, the contract claim failed because an enforceable force majeure provision in the contract limited the defendant's duties to provide in-person instruction.  The plaintiff was, in other words, attempting to circumvent the terms of the parties' contract by alleging unjust enrichment.  Here, the plaintiff has pled that Touro had a contractual duty to provide in-person instruction, Yodice, 2024 WL 3466546, at *2, but its performance was excused by the doctrine of impossibility.

Touro also posits that Yodice fails to plead that equity and good conscience support restitution because he did not

---

³ See also Restatement (Second) of Contracts § 377 cmt. a (explaining that restitution may be available to plaintiff whose counterparty's nonperformance was excused by impracticability); Univ. of Minn. v. Agbo, 673 N.Y.S.2d 812, 813 (2d Dep't. 1998) ("[E]ven assuming impossibility of performance by defendant, plaintiff's performance conferred a financial benefit to defendant which defendant acknowledges receiving.  Defendant cannot keep the benefit without paying for it." (citation omitted)).

allege that Touro engaged in tortious and fraudulent conduct. But fault is not necessary for "circumstances [to] create an equitable obligation running from the defendant to the plaintiff." Corsello, 944 N.Y.S.2d at 740. "Typical cases [where restitution for unjust enrichment is available] are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id. Taking the FAC as true and drawing reasonable inferences in Yodice's favor, this is such a case.

IV. GBL

Finally, Yodice alleges that Touro violated New York consumer protection law by falsely advertising in-person and on-campus experiences to prospective students. Touro has moved to dismiss these claims, arguing that he has failed to plead the necessary elements. Touro is correct, and these claims are dismissed.

GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices in the conduct of any business" and "[f]alse advertising in the conduct of any business," respectively. N.Y. Gen. Bus. L. § 349(a), 350. To state a claim under either provision, the plaintiff must "show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive

16

act or practice." MacNaughton v. Young Living Essential Oils, LC, 67 F.4th 89, 96 (2d Cir. 2023) (citation omitted). "A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." McCracken v. Verisma Sys., Inc., 91 F.4th 600, 607 (2d Cir. 2024) (citation omitted). A "material" statement is one bearing on a consumer's choice to participate in a transaction. Id. at 608.

Yodice does not state a claim under the GBL. According to the FAC, Touro advertised in-person student experiences, inducing potential students to enroll. But these statements were not materially misleading; Touro did offer an on-campus experience. The fact that an unanticipated pandemic forced it to change course does not retroactively render their advertisements deceptive.

Dismissal of Yodice's GBL claims is consistent with the Second Circuit's direction in its remand to consider the impact of Rynasko on Yodice's GBL claims. The Court of Appeals concluded in Rynasko that the plaintiff plausibly alleged that the defendant university had "impliedly agreed to provide students in-person services" and thus that an implied contract existed between the parties. 63 F.4th at 197-98. Here, as in as in Rynasko, Yodice has alleged that Touro promised in-person

17

instruction, and he has alleged that he attended the university in reliance on that promise. But unlike a breach of contract claim, GBL claims require an allegation of materially misleading acts and resulting injury. Yodice has not plausibly alleged that Touro's representation of an on-campus experience was deceptive, or that a reasonable consumer would have understood it to mean that in-person instruction would continue even in a pandemic. Nothing in the FAC suggests Touro did not actually intend to offer a fully in-person experience, or that Yodice or any reasonable consumer would not have enrolled if they knew campus would close in the circumstances it did. Sections 349 and 350 are far-reaching, but they do not require businesses to append "unless impossible" to the end of every advertisement.

In his brief, the plaintiff reframes his GBL claims as based on an omission -- that is, Touro's failure to inform prospective students it would not provide refunds if it had to close its campus. Yodice cites caselaw for the proposition that an omission is actionable "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (N.Y. 1995). But the FAC does not allege that Touro possessed some piece of material information at the beginning of the

Spring 2020 semester unknown to its students that would have affected prospective students' decision to attend the university.

Yodice's brief alleges that Touro "improperly withheld information related to processing refunds" and that "Touro knew that they would not refund students paid fees in the event of contractual faults." These allegations are insufficient to state a claim. Even if they appeared in the FAC, they are conclusory and lack any factual support. And even if they were nevertheless assumed to be true, they do not support an inference that any reasonable consumer's decision to attend TCDM would be affected by the knowledge that, in the event of a pandemic requiring a move to remote instruction, students would not receive partial refunds.

## Conclusion

Touro's October 8, 2024 motion to dismiss is granted in part. Yodice may proceed on the unjust enrichment claim on behalf of people who paid tuition as or on behalf of a student enrolled at TCDM during the Spring 2020 semester.

Dated:   New York, New York
         February 21, 2025

DENISE COTE
United States District Judge