**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – X

MARK YODICE, individually and on behalf of
all others similarly situated

                       *Plaintiff*,

                       v.

TOURO COLLEGE AND UNIVERSITY
SYSTEM,

                       *Defendant*.

:

:

:

:

:

:

    Case No. 1:21-CV-2026

– – – – – – – – – – – – – – – – – – – – – – – – – – X

**DEFENDANT TOURO COLLEGE AND UNIVERSITY SYSTEM'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 56</u>**

Mariah Passarelli
One Oxford Centre
301 Grant St 41st floor
Pittsburgh, PA 15219
Mpassarelli@cozen.com

Janice Sued Agresti
Eliza Estrella
3 WTC 175 Greenwich St.
55th Floor
New York, NY 10007
Jagresti@cozen.com
Eestrella@cozen.com

***Attorneys for Defendant,
Touro College and University Syst***

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD......................................................................................... 2

III.  FACTS ................................................................................................................ 3

IV.   ARGUMENT ...................................................................................................... 3

    A.  Plaintiff has not presented any evidence to support his Unjust Enrichment claim............ 3

    B.  TCDM was not enriched at Plaintiff's expense when it transitioned to remote learning for eight weeks in the Spring 2020 semester. ....................................... 3

    C.  Plaintiff's allegation that the education he received was less valuable than what he paid for is a claim for Educational Malpractice and, as a matter of law, cannot be considered here. ...................................................................................... 8

    D.  Plaintiff's Unjust Enrichment claim is also a masked Breach of Contract claim, which was previously dismissed by chis Honorable Court, and thus likewise cannot be considered here....................................................................... 12

    E.  TCDM's retention of tuition for the Spring 2020 semester does not cut against principles of equity and good conscience. ...................................................... 14

V.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................................2

*Andre v. Pace Univ.*,
655 N.Y.S.2d 777 (2d Dep't 1996) ........................................................................9

*Basso v. New York Univ.*,
2020 WL 7027589 (S.D.N.Y. Nov. 30, 2020) .....................................................10

*Beck v. Manhattan Coll.*,
No. 20-CIV-3229 (LLS), 2023 WL 4266015 (S.D.N.Y. 2023) ..................... *passim*

*Bergeron v. Rochester Inst.*,
No. 20-cv-6238, 2023 WL 1767157 (W.D.N.Y. Feb. 3, 2020) ...........17, 21, 22, 24

*Caro Capital, LLC v. Koch*,
653 F.Supp.3d 108 (S.D.N.Y., 2023) ..............................................................14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..................................................2

*Clark v. Daby*,
300 A.D.2d 732 (3d Dep't 2002*)* ..........................................................................20

*Coughlan v. Jachney*,
473 F.Supp. 3d 166 (E.D.N.Y. 2020) .....................................................................2

*De Leon v. New York Univ.*,
2022 WL 179812 (S.D.N.Y. Jan. 20, 2022) .......................................................9, 11

*Demand Elec., Inc. V. Innovative Tech. Holdings, LLC*,
665 F.Supp. 3d 498 (S.D.N.Y. 2023) ......................................................................2

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
31 N.Y.3d 441 (2018) ....................................................................................3, 6, 7

*Espejo v. Cornell Univ.*,
523 F.Supp. 3d 228 (N.D.N.Y. 2021) *on reconsideration sub nom.* ............8, 15, 22

*Faber v. Cornell Univ.*,
No. 3:20-cv-467, 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021) ............................8

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)................................................................10, 11

*Goldberg v. Pace University*,
    535 F.Supp.3d 180 (S.D.N.Y., 2021)................................................................. *passim*

*Golden Pac. Bancorp v. F.D.I.C.*,
    273 F.3d 509 (2d Cir. 2001).................................................................................3

*Halpern v. F.B.I.*,
    181 F.3d 279 (2d Cir. 1999).................................................................................4

*Hassan v. Fordham Univ.*,
    533 F. Supp. 3d 164 (S.D.N.Y. 2021)......................................................21, 23, 24

*Hewitt v. Pratt Institute*,
    20-cv-2007, 2021 WL 2779286 (E.D.N.Y. July 2, 2021) ........................17, 22, 23

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010).................................................................................4

*In re Columbia Tuition Refund Action*,
    523 F.Supp. 3d 414 (S.D.N.Y. 2021)................................................................8, 11

*In re Jetblue Airways Corp. Privacy Litigation*,
    379 F.Supp.2d 299 (E.D.N.Y., 2005) .................................................................15

*In re University of Miami COVID-19 Tuition and Fee Refund Litigation*,
    649 F.Supp.3d 1245 (S.D.Fla., 2022) .............................................................11, 18

*In re Wythe Berry Fee Owner LLC*,
    654 B.R. 524 (Bankr. S.D.N.Y. 2023).............................................................4, 13

*Johnson v. Killian*,
    680 F.3d 234 (2d Cir. 2012).................................................................................2

*Johnson v. Wave Comm GR LLC*,
    4 F.Supp.3d 423 (N.D.N.Y., 2014)......................................................................15

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000).............................................................................3, 8

*Leslie v. New York Univ.*,
    2020 WL 5819730 ...............................................................................................9

*Marshall v. Switzer*,
    900 F.Supp. 604 (N.D.N.Y. 1995).......................................................................3

*Montessi v. Am. Airlines, Inc.*,
   935 F.Supp. 482 (S.D.N.Y. 1996) ........................................................................2

*Olsson v Board of Higher Ed.*,
   49 N.Y.2d 408 (N.Y., Feb. 20, 1980) ..................................................................10

*Paramount Film Distrib. Corp. v. State*,
   30 N.Y.2d 415 (N.Y. 1972) .................................................................................20

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
   2005 WL 1214281 (S.D.N.Y. May 20, 2005) .......................................................9

*Roe v. Loyola Univ. New Orleans*,
   No. Civ. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ..........................16

*Tasini v. AOL, Inc.*,
   851 F.Supp.2d 734 (S.D.N.Y., 2012)..................................................................14

*Testone v. Niagara Mohawk Power Corp.*,
   No. 91-CV-1042, 1992 WL 72145 (N.D.N.Y. Mar. 26, 1992) ..........................4, 13

*Yodice v. Touro Coll. & Univ. Sys.*,
   No. 21-2986-CV, 2024 WL 3466546 (2d Cir. July 19, 2024)...............................12

**Statutes**

CARES Act................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56..................................................................................................2, 7

Local Rule 42.1 .........................................................................................................20

## I.    INTRODUCTION

Westchester County, New York - home to the Touro School of Dental Medicine ("TCDM") - was the initial epicenter of the COVID-19 pandemic in New York.  By March 31, 2020, Westchester County alone recorded 9,967 confirmed cases of COVID-19. (SOF ¶ 21.)

Plaintiff, a former TCDM student, contends that TCDM overreacted when it transitioned to remote instruction in response to governmental mandates and public-health guidance incident to the onset of the pandemic.  Plaintiff now seeks to profit from TCDM's legitimate and reasoned judgement, claiming (without evidence) that TCDM was somehow unjustly enriched by virtue of its decision (about which it had no legal choice) to transition to remote instruction in March 2020.  In reality, the undisputed evidence establishes that no Unjust Enrichment of TCDM occurred here.

When faced with the COVID-19 pandemic and related government mandates, directing that higher education institutions (like TCDM) cease in-person instruction, TCDM worked quickly and diligently to transition to a remote curriculum that allowed students (like Plaintiff) to seamlessly continue their education, utilizing adapted curriculum and instruction methods, and providing additional academic support.  The efficacy of these steps taken by TCDM (under extraordinary circumstances) is proved by the fact that ***all of the students enrolled at TCDM in March 2020*** – except Yodice, who voluntarily withdrew several semesters later in the Spring of 2021 – ***went on to receive their respective dental degrees***.

Plaintiff has only one claim remaining in this case – a claim for Unjust Enrichment confined to the Spring 2020 semester.  As detailed herein, this claim fails for several reasons.  First, Plaintiff is unable to meet the *prima facie* elements of an Unjust Enrichment claim, including that there is no genuine dispute that TCDM was ***not*** enriched by the transition to remote learning.  Indeed, TCDM's financial position worsened, not improved, due to the pandemic. Second, Plaintiff's assertion that he received a lesser education as a result of remote instruction is barred

by New York's well-established prohibition against Education Malpractice claims (in addition to being simply unsupported by the facts). Third, Plaintiff attempts to advance a theory of Unjust Enrichment that is, in truth, duplicative of his previously-dismissed breach of contract claim, which must not be permitted here. Fourth, and finally, there is nothing inequitable or unconscionable about TCDM's retention of its tuition under these circumstances, as courts in this Circuit have repeatedly recognized in similar COVID-19 tuition refund cases.

For these reasons, summary judgment should be granted in TCDM's favor.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' ... demonstrate the absence of a genuine issue of material fact" and that "the moving party is entitled to judgment as a matter of law."[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56).

Initially, the moving party bears the burden of showing the absence of a genuine issue of material fact.[2] *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.  Notably, "the movant's burden 'may be discharged by showing [ ] that there is an **absence of evidence** to support the nonmoving party's case." *Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 485 (S.D.N.Y. 1996) (citing *Celotex*, 44

---

[1] An issue is "genuine" if it is supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact "might affect the outcome of the suit." *Id.* "In determining whether there are genuine issues of fact, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Demand Elec., Inc. V. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 503 (S.D.N.Y. 2023) (citing *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)).

[2] There can be no genuine issue as to any material fact if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 191 (E.D.N.Y. 2020) (citation omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 485 (S.D.N.Y. 1996).

U.S. at 323); *see also Marshall v. Switzer*, 900 F. Supp. 604, 610 (N.D.N.Y. 1995) (emphasis added).

## III.    FACTS

TCDM fully incorporates its 56.1 Statement as if fully set forth herein.

## IV.    ARGUMENT

### A.  Plaintiff has <u>not</u> presented any evidence to support his Unjust Enrichment claim.

Plaintiff has only one claim remaining in this matter: an Unjust Enrichment claim. Despite ample opportunity for discovery, Plaintiff has ***no evidence*** to establish the required prongs of an Unjust Enrichment claim, including that TCDM was enriched, as Plaintiff alleges.

An Unjust Enrichment claim requires a showing that (1) TCDM was enriched, (2) at Plaintiff's expense, and (3) that it is against equity and good conscience to permit TCDM to retain what is sought to be recovered. *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (N.Y. 2018) (internal citations omitted);  *See also Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). There is absolutely nothing in the record to even remotely support Plaintiff's Unjust Enrichment claim.

### B.  TCDM was <u>not enriched</u> at Plaintiff's expense when it transitioned to remote learning for eight weeks in the Spring 2020 semester.

Under the doctrine of Unjust Enrichment, a plaintiff may obtain restitution from a defendant who has received a benefit at the plaintiff's expense, even in the absence of a binding contract, provided that the defendant's retention of that benefit would be inequitable. In essence, the law intervenes to prevent one party from profiting unfairly at another's expense.  No evidence exists that TCDM – a division of Touro University, a New York non-profit institution – profited

from the Plaintiff's tuition payment in the Spring 2020 semester, nor is there any indication that that payment resulted in an unjust gain to TCDM.

The crux of Plaintiff's argument in the Complaint (without any factual support) is that TCDM saved significant money by shifting to remote instruction (because it did not have to pay certain unspecified expenses), and that TCDM then pocketed this money (at the expense of students, including Plaintiff). (Amended Complaint (ECF No. 37 ), ¶¶ 155–156.)  This assertion is purely conjecture and utterly unsupported by the record evidence. *See in re Wythe Berry Fee Owner LLC*, 654 B.R. 524, 541 (Bankr. S.D.N.Y. 2023) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (internal citations omitted); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (internal quotation marks and citations omitted); *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999) ("Metaphysical doubt, conjecture, or surmise cannot establish such dispute and defeat the motion [for summary judgment.]"); *Testone v. Niagara Mohawk Power Corp.*, No. 91-CV-1042, 1992 WL 72145, at *6 (N.D.N.Y. Mar. 26, 1992) ("[I]n opposition to a motion for summary judgment a non-movant cannot rely on mere conjecture[.]").

| | Total Expenses | Change from Prior Period |
|---|---|---|
| Fall 2018 | $ 14,614,023 | *n/a* |
| Spring 2019 | $ 15,769,202 | 7.90% |
| Fall 2019 | $ 18,386,409 | 16.60% |
| Spring 2020 | $ 18,616,896 | 1.25% |
| Fall 2020 | $ 18,651,669 | 0.19% |

TCDM's finances and budget follow a "Fiscal Year," running from July 1 through June 30 of the following year. (SOF ¶¶ 67-68.)  During the Spring 2020 semester, TCDM incurred higher operating expenses than during the previous semesters. (SOF ¶¶ 70-71.) Indeed, operating expenses *increased* for TCDM by 1.25% compared to the previous semester. (SOF ¶ 70.)



Further, TCDM incurred additional, unbudgeted costs in excess of $100,000 to comply with government mandates and safeguard the health and safety of its community during the pandemic. (SOF ¶¶ 72, 74-77.) These expenditures included personal protective equipment for essential personnel, extended IT staffing support to facilitate remote instruction, enhanced housekeeping services, expanded Zoom licenses for synchronous learning, increased data storage capacity, and other instructive materials. (SOF ¶¶ 74-77.) As just one costly example, to maintain continuity of educational and administrative operations during the pandemic, TCDM had to obtain an enterprise-level DocuSign license – a cost exceeding $94,000 – because secure, legally compliant electronic signatures were essential for processing academic and clinical documentation remotely. (SOF ¶ 77.)

Plaintiff simply was not (and is not) entitled to a tuition refund. On this point, it is notable that Plaintiff did not withdraw from TCDM in the Spring 2020 semester; rather, he completed that semester and received grades and credits for each class in which he was enrolled that term. (SOF ¶¶ 109-110.) Plaintiff then returned to TCDM for the Fall 2020 semester, once again completing and receiving grades in all courses in which he was enrolled. (SOF ¶¶ 112-113.) Plaintiff was then enrolled at TCDM for the Spring 2021 semester and elected to voluntarily withdraw after the start of classes. (SOF ¶¶ 114, 116.) TCDM's refund policy provides tuition refunds only if a student withdraws during the add/drop period or before the start of the semester.[3] (SOF ¶¶ 60-62.) Patently, Plaintiff was not a student entitled to a tuition refund in accordance with TCDM's policy.

---

[3] TCDM does not retain tuition for students who withdraw within the proscribed period. (SOF ¶ 63.)

Plaintiff was fully enrolled in the Spring 2020 semester and, indeed, he completed that semester without withdrawing. (SOF ¶¶ 99-100, 109-110.)  His tuition payment was used for ongoing operations, and he was not otherwise entitled to a refund. (SOF ¶¶ 64-66.) TCDM repeatedly told students that, notwithstanding the remote modality mandated in the Spring 2020 semester, TCDM would not issue tuition refunds outside of its normal policy because tuition (including Plaintiff's) was used to pay for ongoing operating costs, just as in the course of an ordinary semester. (SOF ¶¶ 64-65.) Specifically, during a Town Hall in April 2020, TCDM explained that there would be no tuition adjustments as "coursework is still being delivered, all simulation lab time will be made up, clinic hours will be extended, faculty are still working to provide education, and materials and equipment for simulations are still being paid for." (SOF ¶ 66.)  Simply put, instruction and operation of TCDM did not cease in the Spring 2020 semester, and as such, Plaintiff's tuition for that term was still due and owing.[4]

Thus, the record is undisputed as to these material facts: TCDM's operating costs were *higher* for the Spring 2020 semester (the semester at issue in this litigation). (SOF ¶¶ 70-71.) Indeed, TCDM incurred additional expenses specifically because of remote instruction for the applicable period, and no tuition refunds were owed or improperly withheld. (SOF ¶¶ 65-66, 70-71, 74-77.) TCDM was not enriched, much less at the Plaintiff's expense. It stands to reason that if TCDM's operating expenses **increased** in the Spring 2020 semester, despite its shift to remote instruction, TCDM was not enriched, let alone unjustly so.  Thus, the first prong of Plaintiff's Unjust Enrichment claim fails as a matter of law.  Summary judgment is therefore proper under Rule 56, as this claim cannot survive even the most generous reading of the facts. *See E.J. Brooks*

---

[4] To the extent Plaintiff alleges he was entitled to a tuition refund for the Spring 2021 semester (from which he voluntarily withdrew), this claim has no place in this litigation inasmuch as it is outside the only semester (Spring 2020) at issue here.  Moreover, Plaintiff withdrew from the Spring 2021 semester after the end of the drop/add period and, thus, was not entitled to a tuition refund in accordance with TCDM policy. (SOF ¶¶ 116-118.)

*Co. V. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (N.Y. 2018) (explaining that an Unjust Enrichment claim requires a showing of enrichment).

### i. TCDM lost money as a consequence of the government mandates and social distancing requirements incident to the pandemic in the Spring 2020 semester.

Separate and apart from the increased costs incurred by TCDM during the Spring 2020 semester, TCDM suffered revenue losses during this period because Touro Dental Health (the "Clinic") – the teaching practice of TCDM – could not operate as it regularly did in other semesters. Under normal circumstances, TCDM provides excellent, affordable dental care services to the public while training the next generation of dental professionals (TCDM students), treating approximately 3,000 paying patients per month. (SOF ¶¶ 6, 80.) However, once the shutdown was mandated, all non-emergency services were suspended, resulting in a drastic drop in patient volume – only 74 patients were treated in April 2020, and 87 patients were treated in May 2020. (SOF ¶¶ 79, 81-82.) Even after reopening on June 18, 2020, social distancing requirements limited operations to just 33% capacity. (SOF ¶¶ 49, 83.)  Consequently, only 481 patients were treated in June 2020. (SOF ¶ 84.) Financially, the shutdown caused a severe income loss. Based on pre- and post-shutdown figures, the Clinic would have earned approximately $1,275,002.12, had it not been forced to cease the provision of care for non-emergency cases, from March 16, 2020, through June 18, 2020. (SOF ¶ 85.)  Instead, income during that four-month period fell to just $344,192.07, representing a *loss* of $930,729.95. (SOF ¶ 86). These losses compounded the financial strain on TCDM, which was already incurring significant additional expenses as described above.

### ii. Any government aid received by TCDM is irrelevant to an Unjust Enrichment analysis.

In his Complaint, Plaintiff vaguely asserts that TCDM received government aid related to the COVID-19 pandemic, which he alleges unjustly enriched TCDM. (Am. Compl. ¶ 9.) However,

any suggestion that TCDM profited from this aid, at the expense of its students, is not only false, *but is immaterial and irrelevant to Plaintiff's Unjust Enrichment claim*. TCDM received Coronavirus Aid, Relief and Economic Security Act ("CARES Act") funding, which was directly or indirectly provided to students, including the Plaintiff, by the federal government.[5] (SOF ¶ 88.) Most importantly, however – and fatal to Plaintiff's claim in this regard: a cognizable claim for Unjust Enrichment can exist in this case only if TCDM was unjustly enriched *at Plaintiff's expense*.

Succinctly, restricted funds from CARES Act money cannot be considered money that Plaintiff or other students paid to TCDM, so they cannot support Plaintiff's unjust enrichment claim. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 242 (N.D.N.Y. 2021) *on reconsideration sub nom.*, *Faber v. Cornell Univ.*, No. 3:20-cv-467), 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021) (claiming that institution was in better financial position to bear burden of pandemic was insufficient).  Thus, a discussion of whether TCDM was enriched at the government's expense (by virtue of this aid money) is entirely superfluous to the issue at bar.  Plaintiff's allegations related to government aid cannot, therefore, be considered to support his Unjust Enrichment claim as a matter of law.

> **C. Plaintiff's allegation that the education he received was less valuable than what he paid for is a claim for Educational Malpractice and, as a matter of law, cannot be considered here.**

At the heart of Plaintiff's Complaint is the notion that he is somehow entitled to damages because he alleges he did not receive the education for which he paid during the Spring 2020

---

[5] Likewise, Plaintiff himself received government aid during the Spring 2020 semester. (SOF ¶ 107.)

semester.  At its base, this is a claim for Educational Malpractice masquerading as an Unjust Enrichment claim and, as such, it cannot proceed.

At the outset, such an argument would require the Court to examine whether individual faculty members did or did not provide students with an effective education during the Spring 2020 semester. This it cannot do under New York law.  "New York does not recognize claims that require the Court to second guess the decisions of educators [ ] such as where a court would have to 'evaluate the course of instruction' or 'review the soundness of the method of teaching.'" *De Leon v. New York Univ.*, 2022 WL 179812, at *13 (S.D.N.Y. Jan. 20, 2022) (citing *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996)); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10–11, *14 (S.D.N.Y. May 20, 2005) (dismissing claim).

Despite the well-established state of the law in New York, Plaintiff nonetheless invites the Court to consider Educational Malpractice in this case.  Specifically, he challenges TCDM's decision to move all courses online (despite the very clear government mandates requiring TCDM to do so) and seeks damages based on the alleged "difference in the fair market value of the services and access for which [he] contracted, and the services and access which [were] actually received." (Am. Compl., ¶ 154.) To determine such a "value," the Court would have to assess the quality of remote instruction versus in-person instruction – an inherently academic inquiry. This would involve reviewing course materials, syllabi, assignments, teaching methods, student engagement, and learning outcomes, and then assigning a monetary value to any perceived shortfall.  Such an analysis is speculative and precisely the type of inquiry that New York courts have acknowledged they are not equipped to undertake. "[T]he administrative decisions of educational institutions involve the exercise of highly specialized professional judgment, and these institutions are … better suited to make relatively final decisions concerning wholly internal matters." *Leslie v. New*

*York Univ.*, 2020 WL 5819730, at *4 (Sup. Ct. N.Y. Cty. Sept. 29, 2020 (internal quotation omitted). New York law clearly entrusts these determinations to academic institutions, not the judiciary.

Plaintiff cannot circumvent the New York prohibition on considering Educational Malpractice claims by repackaging his grievance as an Unjust Enrichment claim. Simply put, if Plaintiff's claim rests on the premise that online instruction was educationally inferior, it is barred. *See Basso v. New York Univ.*, 2020 WL 7027589, at * 15 (S.D.N.Y. Nov. 30, 2020) (Courts have "repeatedly rejected" claims that are "essentially repackaged actions asserting educational malpractice."). "Where the essence of the complaint is that the school … fail[ed] to provide an effective education, the complaint must be dismissed …'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–207 (S.D.N.Y. 1998). New York courts have consistently recognized that, in cases involving higher education institutions, the Court must exercise restraint and avoid substituting its judgment for that of university officials regarding academic decisions. *De León v. New York University*, 2022 WL 179812, at *13 (S.D.N.Y., 2022) ("The educational malpractice doctrine flows from an understanding that courts should have a restricted role in dealing with and reviewing controversies involving colleges and universities."). In doing so, courts have explained the policy rationale behind the "bar against educational malpractice claims, [which] recognizes that universities are empowered to set their own academic standards and procedures." *Gally v. Columbia University*, 22 F. Supp. 2d 199, 207 (S.D.N.Y., 1998). Thus, again, the decision of whether a university's curriculum, whether online or in person, "complied with those standards and procedures is best left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis." *Id.* (internal citations and quotations omitted); *see also Olsson v Board of Higher Ed.*, 49 N.Y.2d 408, 413 (N.Y., Feb. 20, 1980) ("This judicial

reluctance to intervene in controversies involving academic standards is founded upon sound considerations of public policy."). A claim whose essence is that a school breached its agreement by failing to provide an effective education is, at bottom, a claim for Education Malpractice that is not cognizable under New York law. *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421-22 (S.D.N.Y., 2021).

In *Goldberg v Pace University*, the Southern District of New York addressed a graduate student's lawsuit brought against a university for Unjust Enrichment stemming from the university's transition to remote learning during the COVID-19 pandemic. *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 185 (S.D.N.Y., 2021). The Court emphasized that "[c]laims for educational malpractice, which ask the court to involve itself in the subjective professional judgments of trained educators – ***are not cognizable under New York law***." *Id*. at 191. (citing *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998)) (emphasis added) (internal quotations omitted). Such claims "allege that a school breached its agreement to provide an effective education and ask a court to evaluate the course of instruction or review the soundness of the method of teaching that has been adopted by an educational institution." *Id*. (internal citations and quotations omitted). The court in *Goldberg* dismissed the plaintiff's Unjust Enrichment claim and the facts here provide an even stronger basis for dismissal.

Unlike *Goldberg*, which involved claims for both fees and tuition, the present case concerns tuition alone. *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-2986-CV, 2024 WL 3466546, at *3 (2d Cir. July 19, 2024) ("We affirm the district court's dismissal of the Fee Claims."). Accordingly, because tuition payments are solely intended to cover the cost of education, Plaintiff's claims necessarily implicate the adequacy or quality of that education, rather than any services for which fees are paid. See *In re University of Miami COVID-19 Tuition and Fee Refund*

*Litigation*, 649 F. Supp. 3d 1245, 1255 (S.D.Fla., 2022) ("To the extent Plaintiffs argue that their education in Spring 2020 was less valuable than they paid for [], Plaintiffs' unjust enrichment claims *are* barred by the doctrine of educational malpractice [because] in order to adjudicate Plaintiff's tuition based-claim for unjust enrichment, this Court would have to examine and evaluate the *quality* of the education that was provided to Plaintiffs.") (internal citations and quotations omitted). Moreover, unlike *Goldberg*, TCDM made no promise of in-person instruction or any specific educational outcome. (SOF ¶¶ 9-11.) To the contrary, TCDM's Catalog expressly reserves the right to modify the method of course delivery at any time. (SOF ¶ 11.)

Accordingly, TCDM is entitled to summary judgment to the extent Plaintiff's Unjust Enrichment claim is premised upon the baseless allegation that the education he received remotely in the Spring 2020 semester was somehow inferior to that which he would have received had the instruction occurred in-person that semester.

### D. Plaintiff's Unjust Enrichment claim is also a masked Breach of Contract claim, which was previously dismissed by this Honorable Court, and thus likewise cannot be considered here.

In support of his Unjust Enrichment claim, Plaintiff also relies on various arguments that are nothing more than a rebranding of his original Breach of Contract claim. (Amended Complaint, ¶¶ 153–157.) Indeed, the Amended Complaint is rife with allegations that are contractual in nature.

For example, in the Amended Complaint, Plaintiff argues that he and "other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the benefits." (Am. Compl. ¶ 150.) Plaintiff further asserts that he "and other members of the Tuition Class did not receive the full benefit of their bargain," and that it "is not the product that students were offered and not the product students expected to receive." (Am. Compl. ¶¶ 153, 157.) These are classic Breach of Contract allegations, premised on the existence of a bargain, an offer, and an alleged failure to deliver the promised product.  Definitively, the

Court cannot consider such allegations here inasmuch as Plaintiff's Breach of Contract claim has already been dismissed with prejudice in this case.

Examination of this point could (and should) end here.  However, it is worth noting that (a) Plaintiff's alleged loss (no matter the nature) is not an element of the only claim he has left in this case (i.e., Unjust Enrichment), (b) Plaintiff's own deposition testimony belies any contention that he attended TCDM in reliance on an on-campus experience, and (c) Plaintiff offers absolutely no evidence to support the notion that TCDM was contractually obligated to provide students with such an experience.

Plaintiff testified that he was allegedly accepted into Columbia's dental program but chose to attend TCDM instead because his "friend [ ] went there" and because he (Plaintiff) had "never been to New York."  (SOF ¶¶ 91-92.) Plaintiff also testified that, throughout his time at TCDM, he lived off campus. (SOF ¶¶ 94-95, 98.)

The assertions Plaintiff relies upon in support of his quasi-Breach-of-Contract claim are not facts at all but are merely conjecture and legal conclusions. For example, Plaintiff repeatedly asserts that students were "promised" in-person instruction and a full on-campus experience. (*See e.g.*, Am. Compl. ¶¶ 21, 107, 110, 113, 136, 150, 154.) Yet, Plaintiff fails to identify any specific enforceable promise or contractual provision to that effect. *In re Wythe Berry Fee Owner LLC*, 654 B.R. 524, 541 (Bankr. S.D.N.Y. 2023) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Testone v. Niagara Mohawk Power Corp.*, No. 91-CV-1042, 1992 WL 72145, at *6 (N.D.N.Y. Mar. 26, 1992) ("[I]n opposition to a motion for summary judgment a non-movant cannot rely on mere conjecture[.]"). In fact, as established in the record, TCDM's policies expressly reserve the right to modify the manner and mode of instruction at its discretion. (SOF ¶ 11.)

Thus, even assuming that these contract-based arguments were permissible at this juncture, (which they are not), Plaintiff has not produced a shred of evidence to suggest that he was ever legally entitled to an in-person education at TCDM. Tuition entitles students to enroll in a dental degree program and the opportunity to earn credits toward a degree; it is not a guarantee of a particular mode of instruction. (SOF ¶¶ 8-11.)  Until Plaintiff elected to voluntarily withdraw from TCDM, Plaintiff earned credits towards his dental degree in just the manner promised by TCDM. (SOF ¶¶ 97, 110, 113, 116.) Thus, to the extent a Breach of Contract claim remained at issue in this case (and it does not), TCDM undeniably fulfilled its contractual obligations to Plaintiff and TCDM is entitled to summary judgment accordingly.

### E. TCDM's retention of tuition for the Spring 2020 semester does not cut against principles of equity and good conscience.

Definitively, it was not against equity and good conscience for TCDM to retain the tuition Plaintiff paid for the Spring 2020 semester.

The essential inquiry in a claim for Unjust Enrichment is whether it is against equity and good conscience to permit TCDM to retain what is sought to be recovered (here, Plaintiff's Spring 2020 tuition). *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-41 (S.D.N.Y., 2012) (dismissing Unjust Enrichment claim with prejudice, in part, because plaintiff "fails to demonstrate that the principles of equity and good conscience require restitution[.]"); *Caro Capital, LLC v. Koch*, 653 F. Supp. 3d 108, 119 (S.D.N.Y., 2023) ("The essential inquiry in any action for Unjust Enrichment or restitution … is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.") (internal citation omitted).

When analyzing equity and good conscience, "courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the

defendant's conduct was tortious or fraudulent." *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 451 (N.D.N.Y., 2014) (granting summary judgment on Unjust Enrichment claim) (internal citation omitted); *Caro Capital*, LLC v. Koch, 653 F. Supp. 3d 108, 119 (S.D.N.Y., 2023) (same). Restitution claims are dismissed when plaintiffs fail to show they are supported by equity and good conscience. *In re Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299, 330 (E.D.N.Y., 2005) (granting dismissal of Unjust Enrichment claim because "even assuming arguendo that [defendant] was enriched at plaintiffs' expense, plaintiffs have failed to demonstrate that equity and good conscience require restitution by [defendant].");  *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 451-52 (N.D.N.Y., 2014) (granting summary judgment, in part, because moving party "did not receive those benefits through any tortious or fraudulent conduct[.]"); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 242 (N.D.N.Y. 2021) (dismissing a COVID-related Unjust Enrichment claim against a university because plaintiffs did not suggest that the university's retention of tuition and fees was tortious or fraudulent).  It is axiomatic that universities collect tuition from their students in the ordinary course of educational instruction and that such payments do not constitute fraud or tortious conduct.  *Beck v. Manhattan Coll.*, No. 20-CIV-3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. 2023) ("College's retention of the [tuition] payments was not unjust" in part because "[n]othing about [the] College's conduct was tortious or fraudulent.").

As discussed herein, throughout the Spring 2020 semester, TCDM operated continuously. TCDM (a non-profit institution) spent an extra $230,387 on operating expenses during the Spring 2020 semester, as compared to the Fall 2019 semester, specifically due to impacts of the COVID-19 pandemic. (SOF ¶¶ 71, 74.)   TCDM went to great lengths to ensure that Plaintiff's education remained on schedule and on track during the Spring 2020 semester. (SOF ¶¶ 25-29, 51-55, 57.) No curricular content was eliminated or re-sequenced as a result of remote instruction. (SOF ¶ 57.)

Plaintiff's anticipated graduation date at TCDM was not delayed, although he voluntarily withdrew from TCDM approximately one year after the semester at issue in this case. (SOF ¶¶ 110-112, 116.)

TCDM had a clear and unambiguous tuition refund policy, which stated that students are eligible for tuition reimbursement if they notify TCDM of their withdrawal prior to a given date that follows each semesters Add/Drop period. (SOF ¶¶ 60-63.)  It is undisputed that Plaintiff never withdrew from classes during the Spring 2020 semester. (SOF ¶¶ 109-112.) Instead, he completed all of the classes for which he was enrolled that semester, receiving all associated course credits. (SOF ¶¶ 109-110.) He then enrolled in and completed all of his classes for the following semester (the Fall 2020 semester), again receiving all associated course credit, and did not elect to voluntarily withdraw until after the end of the proscribed tuition refund period following the start of the Spring 2021 semester. (SOF ¶¶ 112-118.)  Nothing about these facts suggest that Plaintiff was entitled to a tuition refund at any point, much less a refund somehow associated with the Spring 2020 semester (again, the only semester at issue in this case).  *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021), appeal docketed, No. 21-1377 (2d Cir. May 28, 2021) (university's continued provision of instruction and services during pandemic "is not close to a case in which 'equity and good conscience' require restitution"). *See also Roe v. Loyola Univ. New Orleans*, No. Civ. 07-1828, 2007 WL 4219174, at *3 (E.D. La. Nov. 26, 2007).

Plaintiff is not the first individual to attempt this avenue of recovery against a college or university.  Multiple courts within this Circuit have considered Unjust Enrichment claims arising from the COVID-19 pandemic and have consistently found such claims unpersuasive. Specifically, they have concluded that it "is quite implausible to view [the College]'s suspension of in-person instruction as inequitable." *See Beck v. Manhattan Coll.*, No. 20-CIV-3229 (LLS), 2023 WL

4266015, at *3 (S.D.N.Y. 2023) (internal citations omitted); *Bergeron v. Rochester Inst.*, No. 20-cv-6238, 2023 WL 1767157, at *11 (W.D.N.Y. Feb. 3, 2020); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y 2021) ("[T]here were compelling—indeed, compulsory—reasons for [the university's] abrupt move to online learning.").  Just as in these cases, it is quite implausible for this Court to consider TCDM's cessation of in-person instruction as somehow inequitable; Plaintiff cannot, in any way, prove otherwise.

There is no allegation that Plaintiff misunderstood the terms of his enrollment, or that TCDM misrepresented the tuition obligations. In fact, Plaintiff received the educational services he paid for, even if he now disputes their value or delivery method. Further, as mentioned above, TCDM communicated to its students through multiple Town Halls held during the Spring 2020 semester that their tuition would not be refunded due to ongoing operating costs because "coursework [wa]s still being delivered, all Simulation Lab time will be made up, clinic hours will be extended, faculty are still working to provide education, and materials and equipment for simulations are still being paid for." (SOF ¶ 66.) Accordingly, it cannot be said that Plaintiff conferred a benefit to TCDM under a mistake of fact or law.

### i.  Plaintiff received the education he paid for.

As stated above, Courts have dismissed similar Unjust Enrichment claims against colleges on the basis that "equity and conscience [did not] require restitution" when students continued to receive an education after the transition to remote learning. *See, e.g., Hewitt v. Pratt Institute*, 20-cv-2007, 2021 WL 2779286, at *4 (E.D.N.Y. July 2, 2021) (determining that summary judgment was warranted on plaintiffs' Unjust Enrichment claims against a university for retaining tuition in the Spring 2020 semester because "[p]laintiffs, who had already enjoyed half their semester in person, continued to receive an education and credits toward their degrees" after the shift to remote

instruction). Similarly, in *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, the court granted summary judgment on a COVID-19-related Unjust Enrichment claim against a university, emphasizing that "Plaintiffs were, first and foremost, students pursuing a degree which required them to earn a certain number of credit hours. They paid tuition for the privilege of taking classes at [the University]." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 649 F. Supp. 3d 1245, 1255 (S.D. Fla. 2022), *aff'd sub nom. Dixon v. Univ. of Miami*, 75 F.4th 1204 (11th Cir. 2023).

Here, students paid TCDM for the opportunity to take courses and earn credits towards a dental degree. (SOF ¶ 8.) This is precisely what Plaintiff received in Spring 2020. Specifically, Plaintiff continued taking the same courses after the shift to remote learning. (SOF ¶ 100.) Plaintiff also experienced no delay in his instruction as a result of this transition, since TCDM began offering online instruction on Monday, March 16, 2020, the first working day following its final day of in-person instruction on Friday, March 13, 2020. (SOF ¶ 42.) Further, Plaintiff received passing grades for his Spring 2020 courses, which provided him with credit towards his degree. (SOF ¶ 110.) TCDM maintained its program integrity and accreditation with the Commission on Dental Accreditation ("CODA") despite the shift to remote learning, as CODA's accreditation standards did not require TCDM to provide a specific, on-campus experience. (SOF ¶¶ 3, 37, 39-41.) In addition, TCDM provided its students with ample opportunities to continue developing their dentistry skills by offering virtual lab simulations to D1 students, in which students worked with small groups of 8-10 students under the supervision of a professor. (SOF ¶ 45.) Professors observed students performing dental procedures one at a time in order to evaluate their performance. (SOF ¶ 46.) In addition, TCDM offered in-person makeup Simulation Lab sessions for students who wanted additional hands-on practice with dental procedure as early as June 22,

2020. (SOF ¶¶ 50-51, 55.)  These in-person makeup labs allowed students to further practice conducting oral procedures. (SOF ¶¶ 50, 54.) Plaintiff had access to these offerings and completed all lab requirements for the Spring 2020 semester. (SOF ¶¶ 50, 109.) Moreover, to the extent Plaintiff felt all of these measures combined were inadequate for purposes of his education, Plaintiff could have requested a waiver for special admission to on-campus buildings but chose not to request one.  (SOF ¶¶ 32-33.)

To the extent Plaintiff contends he did not receive the education he expected because his instruction was delivered online rather than in person, that argument also fails. As an initial matter, Plaintiff **did** receive in-person instruction for a portion of the Spring 2020. (SOF ¶ 99.)  With respect to the rest of the semester, TCDM does not promise students an on-campus experience or otherwise guarantee in-person instruction. (SOF ¶¶ 9-10.)  TCDM's Catalog states that TCDM has the right to change the method of course delivery and other relevant policies at any time. (SOF ¶ 11.) In addition, TCDM holds itself out to the public as a commuter campus, with many of its students (including Plaintiff) commuting to classes rather than living on campus. (SOF ¶¶ 7, 94-95, 98). Plaintiff resided in a private off-campus apartment in Elmsford, New York during his studies at TCDM, until as early as April 2020, when he chose to go home to South Carolina for the remainder of the Spring 2020 semester. (SOF ¶¶ 95, 98, 103.)

Plaintiff has no credible basis to suggest that he enrolled at TCDM to take advantage of opportunities for on-campus student life, Plaintiff received the services that he paid TCDM to provide, and TCDM's retention of Plaintiff's Spring 2020 semester tuition was legally justified.

### ii.  It was equitable for TCDM to retain Plaintiff's Spring 2020 semester tuition.

To prevail on a claim for Unjust Enrichment, a plaintiff must demonstrate that "it is **against equity and good conscience** to permit the defendant to retain what is sought to be recovered."

*Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (N.Y. 1972) (emphasis added). As part of this analysis, "courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Id. See also Clark v. Daby,* 300 A.D.2d 732, 732-33 (3d Dep't 2002*)* (applying this analysis to grant summary judgment on an Unjust Enrichment claim and holding that there was no Unjust Enrichment where any benefit received by the defendant was "purely incidental" and defendant's conduct was not "tortious or fraudulent" in any manner).

In the context of the COVID-19 pandemic, again, numerous courts have held that "***[i]t is quite implausible to view [a college's] suspension of in-person instruction as inequitable.***" *Beck v. Manhattan Coll.,* No. 20-CIV-3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. 2023) (emphasis added) (internal citation omitted).[6] Notably, in *Beck*, the court granted summary judgment on students' Unjust Enrichment claims because it found that there was nothing inequitable about the college's retention of tuition after temporarily shifting to remote learning during the pandemic. *Id.* at *3. The court "assess[ed] considerations of equity and justice" and emphasized three main findings. *Id.* at *2-*3. First, the court determined that "there were compelling—indeed, compulsory—reasons for [the College's] abrupt move to online learning" based on the national pandemic and government-mandated shutdown of non-essential businesses. *Id.* at *3 (citing *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021)). Second, the court also emphasized that plaintiff and other students "received continuity in their education and were able to timely complete their coursework with their same professors (albeit remotely) to continuously

---

[6] *Beck v. Manhattan Coll.,* No. 20-CIV-3229 (LLS), 2023 WL 4266015 (S.D.N.Y. 2023) was appealed to the Second Circuit. However, that appeal has since been voluntarily withdrawn by stipulation of the parties. Local Rule 42.1 Stipulation, No. 23-1049, (2d Cir. July 30, 2025), Dkt No. 157.

earn credits toward their degree." *Id.* at *3. Third, the court determined that no financial benefit remained with the college, as it lost over $2 million dollars in fiscal year 2019-2020. *Id.*

Similarly, in *Bergeron v. Rochester Inst. of Tech.*, a court granted summary judgment on an Unjust Enrichment claim based on a university's shift to remote learning during the COVID-19 pandemic. *Bergeron v. Rochester Inst. of Tech.*, No. 20 CV 6283, 2023 WL 1767157, at *11 (W.D.N.Y. Feb. 3, 2023). The court based its decision, in part, on its conclusion that the university's actions were not inequitable, as moving to remote instruction was necessary considering the pandemic and there was evidence that the university paid additional expenses based on the shift to remote learning. *Id.* In evaluating these equitable considerations, the court emphasized that the university had "presented substantial unrefuted evidence that it actually incurred significant additional expenses in moving to a remote modality in order to allow its students to finish out the semester, and obtain appropriate credit toward graduation for the courses they were enrolled in" because it submitted a declaration from the University's controller about additional, unbudgeted expenses incurred to implement remote learning in spring 2020. *Id.*

Numerous other courts have reached the same conclusion regarding Unjust Enrichment claims based on colleges' and universities' transitions to remote learning. *See, e.g., Hassan v. Fordham Univ.*, 533 F. Supp. 3d 164, 169-70 (S.D.N.Y. 2021) (holding that an Unjust Enrichment claim based on a university's shift to remote learning during the COVID-19 pandemic failed because plaintiff's allegations "[did] not to rise to the level of tortious or fraudulent conduct sufficient to support an Unjust Enrichment claim"); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 198-99 (S.D.N.Y. 2021) (granting a motion for judgment on the pleadings with respect to a plaintiff's COVID-related Unjust Enrichment claim against a university because plaintiff failed to suggest that the "cessation of in-person education in the face of the pandemic would lead to

inequity …, or to [the university's] Unjust Enrichment, particularly because there were compulsory reasons for the university's shift to remote instruction and plaintiff continued to receive an education from the university after the shift to online learning); *Hewitt v. Pratt Inst.*, No. 20-cv-2007 (ERK) (SJB), 2021 WL 2779286, at *4 (E.D.N.Y. 2021) (granting a motion to dismiss a COVID-related Unjust Enrichment claim because plaintiff's allegations did not suggest that "equity and good conscience require[d] restitution" or that "Pratt's suspension of in-person instruction [was] inequitable" because there were compelling reasons for Pratt's shift to remote learning, Pratt incurred additional costs to rapidly shift to a remote learning format, and students continued to receive an education and credit towards their degrees while studying online); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 242 (N.D.N.Y. 2021) (dismissing a COVID-related Unjust Enrichment claim against a university at the motion to dismiss stage because plaintiffs did not suggest that the university's retention of tuition and fees was tortious or fraudulent).

Here, similar to the COVID-19-related cases cited above*,* there is nothing unjust about permitting TCDM to retain students' tuition for the spring 2020 semester despite the shift to remote learning. Myriad facts support this conclusion. First, like the universities in the cases cited above, TCDM was compelled by governmental authorities to shut down its campus as a non-essential business during the COVID-19 pandemic. (SOF ¶¶ 16-19, 25, 30-31, 37.) *See Beck*, 2023 WL 4266015, at *3; *Bergeron*, 2023 WL 1767157, at *11; *Goldberg*, 535 F. Supp. 3d at 199; *Hewitt*, 2021 WL 2779286, at *4; *Espejo*, 523 F. Supp. 3d at 244. Specifically, TCDM was required to cease in-person instruction as of March 22, 2020, after then-New York State Governor Andrew Cuomo's executive order required all non-essential businesses in New York to close from March 22, 2020, through April 2020. (SOF ¶ 16.) Then-Governor Cuomo later extended this order through May 15, 2020. (SOF ¶ 19.) Then-Governor Cuomo did not announce that dentists could

reopen statewide until June 1, 2020. (SOF ¶ 20.) This context belies any claim that TCDM's actions were inequitable. *See Beck,* 2023 WL 4266015, at *3; *Goldberg*, 535 F. Supp. 3d at 199; *Hewitt,* 2021 WL 2779286, at *4.

Second, even absent this legal requirement, it would have been unsafe for Touro to require members of the campus community to continue working or learning in-person (performing dental procedures within inches of their patients) during a pandemic that led to millions of deaths. (SOF ¶¶ 15, 21, 22.) In recognition of the dangerous nature of the COVID-19 virus, both the federal government and New York state government had declared states of emergency in connection with the pandemic by March 13, 2020. (SOF ¶¶ 12, 14.) By March 16, 2020, the American Dental Association had also recommended that dentists stop performing any elective procedures. (SOF ¶ 15.) Therefore, in the context of an emerging and lethal pandemic, TCDM paused in-person instruction to keep students, employees, and other members of the academic community safe. (SOF ¶¶ 15, 22, 25.)

Third, like the colleges and universities in the cases cited above, TCDM did not act tortiously or fraudulently in retaining tuition payments after transitioning to remote learning. Instead, the evidence demonstrates that TCDM acted in good faith to continue serving its students during the pandemic, while also protecting the safety of the campus community and the college's financial wellbeing. It is immaterial that Plaintiff believed that it was "an overreaction" for TCDM to close its campus during the pandemic or that he disagreed with TCDM's reasons for retaining tuition despite this temporary shift to remote learning. (SOF ¶ 102.) Like Plaintiff, in *Hassan*, a student alleged that a university's decision not to issue tuition refunds for the Spring 2020 semester was arbitrary and unsupported by adequate reasoning. *Hassan*, 533 F. Supp. 3d at 169. However, the *Hassan* court determined that these allegations did "not rise to the level of tortious or fraudulent

conduct sufficient to support an Unjust Enrichment claim." *Id.* Here, similarly to *Hassan*, Plaintiff's personal disagreement with TCDM's response to the COVID-19 pandemic does not suggest any tortious, fraudulent, or otherwise improper activity on the part of TCDM.

Fourth, like the colleges and universities in the cases cited above, TCDM continued offering online educational offerings to students, albeit remotely, after shutting down its campus in the Spring 2020 semester. (SOF ¶¶ 28, 42, 45-46, 100, 108-110.)  Like in *Beck*, TCDM's students were able to continue taking courses with their professors and progressing towards the requirements of their degrees during this time. (SOF ¶¶ 42, 100, 108-110.) Moreover, once in-person instruction could resume, TCDM offered in-person makeup sessions for students who missed Simulation Labs or wanted additional practice in the lab. (SOF ¶ 50.)

Fifth, TCDM incurred additional expenses in the Spring 2020 semester than it otherwise would have because of its rapid shift to remote instruction. (SOF ¶¶ 70-77.) Touro Controller Stuart Lippman's declaration about TCDM's spending during the COVID-19 pandemic is sufficient to establish this fact. *See, e.g.*, *Bergeron*, 2023 WL 1767157, at *11 (determining that a university incurred additional, unbudgeted expenses because of the shift to remote learning during the COVID-19 pandemic based on the unrefuted declaration from a University controller to this effect).

Sixth, TCDM did not retain a financial benefit based on its shift to remote learning. As discussed above, TCDM incurred additional expenses during the Spring 2020 semester due to the shift to remote learning. (SOF  ¶¶ 70-77.) Moreover, TCDM used the tuition funding it obtained from students to continue to provide them with educational services while rapidly shifting and adapting to virtual instruction during the Spring 2020 semester. (SOF ¶¶ 65-66.). Therefore, it was equitable for TCDM to retain students' tuition payments for the Spring 2020 semester.

Finally, Plaintiff has presented no evidence to suggest that he conferred a benefit on TCDM under a mistake of fact or law. Instead, Plaintiff paid tuition in exchange for instruction and course credit from TCDM that he, indeed, received for the Spring 2020 semester. (SOF ¶¶ 8, 109-110.) The evidence demonstrates that TCDM acted in good faith to protect its academic community, while continuing to offer a high-quality education to students via remote learning, in a manner that was both equitable and in good conscience.

## V.    CONCLUSION

At base, Plaintiff is an opportunist, not a legitimately aggrieved former student. There is absolutely no evidence in this case to suggest that TCDM was unjustly enriched by Plaintiff's payment of tuition in the Spring 2020 semester. TCDM never ceased operations that semester, during which its operating expenses increased and its revenue decreased. Plaintiff timely completed all of his Spring 2020 semester courses, received credit for those classes, and would have been able to progress – on time and on track- towards receipt of his dental degree, had he not elected to voluntarily withdraw from TCDM approximately a year after the events of this case.[7]

For these reasons, and as detailed herein and in TCDM's accompanying Statement of Undisputed Material Facts, summary judgment must be granted in favor of TCDM.

---

[7] Plaintiff's arguments that the remote education he received that semester was somehow less valuable and/or that TCDM somehow had a contractual obligation to continue in-person instruction (despite government mandates to the contrary) fail as a matter of law inasmuch as there is no legally cognizable Educational Malpractice claim in New York and Plaintiff's Breach of Contract claim has already been dismissed from this case, with prejudice.

Dated: October 30, 2025
New York, NY

Respectfully submitted,

**COZEN O'CONNOR**

By: ___*s/Mariah Passarelli*___
      Mariah Passarelli (pro hac vice)
      Janice Sued Agresti
      Eliza Estrella
      3 WTC 175 Greenwich Street
      55th Floor
      New York, NY 10007
      (212) 509-9400
      mapassarelli@cozen.com
      jagresti@cozen.com
      eestrella@cozen.com

      *Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

The undersigned counsel certifies that this Memorandum of Law was prepared by Microsoft Word processing system, with Times New Roman typeface and 12-point font. Relying on the word count of the word-processing system, the total number of words in this document, exclusive of the caption, table of contents, table of authorities and signature block, is 8185 words.

Dated: New York, New York

October 30, 2025

_s/ Mariah Passarelli_
Mariah Passarelli

**<u>PROOF OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served via ECF on all counsel

or parties of record.


_<u>s/ Mariah Passarelli</u>_
Mariah Passarelli